UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

May 5, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Timothy M. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-1246-BAH

Dear Counsel:

On May 24, 2022, Plaintiff Timothy M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 11), the parties' dispositive filings (ECFs 14 and 16),[1] Defendant's supplemental brief addressing recent Fourth Circuit case law (ECF 19), and Plaintiff's reply to Defendant's supplemental brief (ECF 20). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will GRANT Defendant's motion for summary judgment and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on April 8, 2015, alleging a disability onset of April 3, 2014. Tr. 250–55. Plaintiff's claim was denied initially and on reconsideration. Tr. 144–47, 151–52. On November 3, 2017, an Administrative Law Judge ("ALJ") held a hearing. Tr. 48–69. Following the hearing, on February 6, 2018, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 20–46. The Appeals Council denied Plaintiff's request for review of the decision, Tr. 1–7, so Plaintiff requested review by this Court. Tr. 1053–54. The Court remanded Plaintiff's case to the SSA for further proceedings on October 2, 2019. *Id.*

The Appeals Council issued a remand order on October 30, 2019. Tr. 1055–60. A new

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." While Plaintiff filed a brief in support of reversal or remand, Defendant filed a motion for summary judgment.

[2] 42 U.S.C. §§ 301 et seq.

hearing was held before a different ALJ on March 1, 2021. Tr. 1020–52. On June 17, 2021, that ALJ issued a decision denying Plaintiff's claim. Tr. 991–1019. The Appeals Council denied Plaintiff's request to review that decision, Tr. 980–85, so the June 17, 2021, decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 6, 2015. Tr. 997. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "borderline intellectual functioning; specific learning disorder; bipolar disorder; unspecified personality disorder; attention-deficit disorder (ADD); attention-deficit hyperactivity disorder (ADHD); generalized anxiety disorder; and posttraumatic stress disorder (PTSD)." *Id.* (citation omitted). The ALJ also determined that Plaintiff suffered from the non-severe impairments of slight scoliosis of the thoracic spine, gastroesophageal reflux disorder, and seasonal asthma. *Id.* At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 998. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine, repetitive tasks, not at a production pace rate, meaning no assembly line type work, others' production would not be dependent upon the claimant's, and no periods of fast-paced activities; and the claimant can have only occasional contact with supervisors, coworkers, and the public.

Tr. 1000. The ALJ determined that Plaintiff had no past relevant work but could perform other jobs that existed in significant numbers in the national economy. Tr. 1009. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 1010.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises four main arguments on appeal. First, Plaintiff argues that the ALJ erred in assessing his RFC because the ALJ's analysis did not include a function-by-function analysis or an adequate narrative discussion. ECF 14, at 4–9. Second, Plaintiff avers that the ALJ failed to properly evaluate the opinion evidence of multiple examining physicians. *Id.* at 9–14. Third, Plaintiff contends that the ALJ failed to explain her conclusion that Plaintiff could maintain concentration, attention, and pace for at least 85 to 90 percent of the workday. *Id.* at 14–15. Lastly, Plaintiff argues that the ALJ failed to address his ability to perform work-related activities eight hours per day, for five days per week. *Id.* at 15–17.

Defendant counters: (1) that substantial evidence supported the ALJ's RFC conclusions; (2) that the ALJ "adequately explained how she evaluated the opinion evidence"; (3) that "Plaintiff does not point to evidence in the record conflicting with a finding that Plaintiff would be able to stay on task given the ALJ's RFC determination"; and (4) that the ALJ's finding that Plaintiff could work an eight-hour day was "inherently part of the RFC finding" in this case, and thus did not constitute error. ECF 16-1, at 5–19 (citations omitted).

The parties also take adverse positions on whether the Fourth Circuit's recent case of *Shelley C. v. Commissioner*, 61 F.4th 341 (4th Cir. 2023), requires remand in this case. Defendant contends that *Shelley C.* did not alter the standard for evaluating medical opinions under 20 C.F.R. § 416.927(c) and that the ALJ properly complied with that standard. ECF 19, at 2–7. Plaintiff agrees that *Shelley C.* "did not change an Administrative Law Judge's obligation to meaningfully consider the six [20 C.F.R. § 416.927(c)] factors in evaluating opinion evidence," but contends that the ALJ in this case failed to make these considerations. ECF 20, at 1–6.

A.  The ALJ Properly Determined Plaintiff's RFC.

As an initial matter, Plaintiff argues that the ALJ failed to perform a function-by-function assessment of his ability to perform work, and also failed to set forth a narrative discussion

showing how the evidence supported each of the RFC's conclusions. ECF 14, at 4–9. Both arguments are unavailing.

First, the Fourth Circuit has held that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Remand is only required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). As such, the lack of an explicit function-by-function analysis does not warrant remand.

Moreover, a careful review of the ALJ's decision makes clear that the ALJ amply supported the RFC determination with substantial evidence. The ALJ engaged in a narrative discussion of Plaintiff's medical evidence spanning almost nine pages and citing to specific evidence in the record. Tr. 1000–09. The ALJ also logically explained how this evidence, along with Plaintiff's testimony, the opinions of various physicians, and the State agency medical consultants' assessments, leads to the conclusion that Plaintiff can perform a full range of work at all exertional levels with certain nonexertional limitations. *Id.*

Plaintiff takes specific issue with the RFC's mental limitations, arguing that the ALJ failed to support them with adequate analysis. ECF 14, at 8–9. But the ALJ's discussion adequately accounts for these limitations. For example, the ALJ balanced evidence of Plaintiff's borderline intellectual disorder, poor attention and concentration on exams, and ADD against evidence that Plaintiff was an "extremely bright" student who has taken on the "demanding" role of caring for three young children without assistance. Tr. 1006. In so doing, the ALJ acknowledged that while none of Plaintiff's activities was "dispositive," his ability to perform them, "considered in conjunction with" the remainder of the evidence, suggested that he could work on a regular and continuing basis within the RFC's parameters. *Id.* Given this, the ALJ adequately explained the connection between the RFC limitations and the evidence sufficient for the Court to conclude that the decision is supported by substantial evidence.[3]

B. The ALJ Properly Evaluated the Opinion Evidence of Plaintiff's Physicians.

For cases filed prior to March 27, 2017, ALJs weigh medical opinions in accordance with 20 C.F.R. § 416.927(c). This regulatory framework requires an ALJ first to follow the "treating physician rule," which mandates that the medical opinion of a treating physician be entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory

---

[3] Additionally, Plaintiff fails to suggest what limitations should have been included in the RFC that were not. Thus, it is unclear how the ALJ's alleged errors changed the outcome here. In fact, it appears that the ALJ devised an RFC that was arguably *more* restrictive than the evidence may have called for by including multiple mental limitations in the RFC despite casting some doubt upon Plaintiff's mental impairments.

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). "[T]he treating physician rule is a robust one: '[T]he opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence.'" *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 (4th Cir. 2020) (citing *Coffman*, 829 F.2d at 517). At the same time, the treating physician rule "is not absolute," and an ALJ may afford a treating physician's opinion less weight if there is more persuasive contradictory evidence in the record. *Hines v. Barnhart*, 453 F.3d 559, 563 n.2 (4th Cir. 2006) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

"Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the '[l]ength of the treatment relationship and the frequency of examination'; (2) the '[n]ature and extent of the treatment relationship'; (3) '[s]upportability,' i.e., the extent to which the treating physician 'presents relevant evidence to support [the] medical opinion'; (4) '[c]onsistency,' i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to 'issues related to his or her area of specialty'; and (6) any other factors raised by the parties 'which tend to support or contradict the medical opinion.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384–85 (4th Cir. 2021) (citations omitted). In *Shelley C.*, the Fourth Circuit emphasized that "[m]ere acknowledgement of the regulation's existence is insufficient and falls short of the ALJ's duties." 61 F.4th at 354. But the Fourth Circuit also made clear that a reviewing court is permitted to infer that the ALJ considered the factors based on the opinion as a whole. *See, e.g., id.* ("From this discussion, we can infer that the ALJ was aware of the examining relationship that existed between Shelley C. and Dr. Beale, which satisfies [the] first factor.").

Plaintiff argues that the ALJ erred in assessing the medical opinions of Drs. Jennifer Murphy, Joseph Berliant, Miles Diller, and Charles Edner. ECF 14, at 9–14. While Plaintiff acknowledges that the ALJ considered the factors of supportability and consistency in assessing these opinions, he contends that the ALJ's analysis was "completely silent" as to the remaining factors listed at 20 C.F.R. § 416.927(c). *Id.* at 12. I disagree.

First, the ALJ's decision contains an ample summary of Plaintiff's July 28, 2017, visit with Drs. Murphy and Berliant. The ALJ noted the length of the treatment relationship (in this case, a one-time visit) by stating that Drs. Murphy and Berliant performed "a psychological evaluation assigned through DSS to evaluate [Plaintiff's] ability to care for his son." Tr. 1004 (citation omitted). The ALJ also recounted the findings of the evaluation in detail and provided citations to the record reflecting the findings. *Id.* Second, the ALJ amply considered a one-time "consultative psychological exam" which Dr. Diller administered to Plaintiff on December 6, 2017. Tr. 1005 (citation omitted). The ALJ summarized the findings of this exam, which included a "Mini-Mental Status Examination," and included corresponding record citations. Tr. 1005, 1008. Lastly, the ALJ recounted Plaintiff's multiple visits to Dr. Edner, who treated Plaintiff for "mental impairments." Tr. 1005–06. The ALJ summarized the findings of Plaintiff's visits with Dr. Edner, which occurred in 2018, 2019, and 2020. *Id.* Given these evaluations, the ALJ's decision adequately accounts for the frequency of examination, length, nature, and extent of Plaintiff's

treatment relationships with these physicians. *See* 20 C.F.R. § 416.927(c).

The remaining factors under 20 C.F.R. § 416.927(c) were also considered. Regarding specialization, the ALJ accounted for the expertise of each physician by either explaining why Plaintiff saw the doctor in question or by providing the doctor's credentials. *See* Tr. 1008 (stating that Dr. Edner treated Plaintiff for "mental impairments"); *id.* (referring to "Dr. Milles Diller" and to "Dr. Jennifer Murphy and Joseph Berliant, MA"). These references are sufficient to show that the ALJ considered the medical sources' respective areas of specialty. *See, e.g.*, *Tyheia S. v. Kijakazi*, Civ. No. ADC-21-3185, 2022 WL 17585283, at *5 (D. Md. Dec. 12, 2022) (finding that listing the suffix "M.D." in a doctor's name is a sufficient consideration of the specialization factor). Lastly, because Plaintiff points to no "other factors" raised by either party which warrant consideration, the final factor under 20 C.F.R. § 416.927(c) is also satisfied.[4]

### C. The ALJ Was Not Required to Determine a Percentage of Time Off-Task.

Plaintiff next argues that the ALJ "failed to set forth any explanation," through medical records or otherwise, as to "how she determined that an individual with moderate limitations in concentration, persistence, or pace would be capable of maintaining concentration, attention, and pace for at least 85 to 90 percent of the workday." ECF 14, at 14. At the hearing, the vocational expert testified that being off task between 10 and 15 percent of the time would be "acceptable" to a hypothetical employer. Tr. 1050. But Plaintiff's argument is unavailing because the ALJ's decision does not include any finding that Plaintiff would be off task for a particular period of time. *See generally* Tr. 994–1010. Indeed, the ALJ was not required to make any such finding. *See, e.g.*, *Kane v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018) ("[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday."). Given this, Plaintiff's argument is unavailing, as the ALJ was not required to determine a percentage of time off-task.

### D. The ALJ Need Not Address Plaintiff's Ability to Work Eight Hours Per Day.

As a final matter, Plaintiff contends that the ALJ "failed to address the Plaintiff's abilities to perform work-related activities eight hours per day, five days per week." ECF 14, at 15.

---

[4] Within the context of his argument related to medical source opinions, Plaintiff briefly raises two other issues regarding the ALJ's treatment of opinion evidence in this case. Neither warrants remand. First, Plaintiff contends that the ALJ's "rationale does not support her rejection" of the opinions of Drs. Murphy, Berliant, and Diller. ECF 14, at 13. But, contrary to Plaintiff's assertion, the ALJ did not "reject" these opinions; rather, she gave them either "partial" or "little" weight. Tr. 1008. Plaintiff also contends that the ALJ failed to address certain evidence relevant to his mental state, his supervision of his children, and his failure to perform gainful activity. ECF 14, at 14. But Plaintiff does not explain how this evidence would impact the ALJ's conclusions, and in any event, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [the] decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). As such, these arguments are unavailing.

*Timothy M. v. Kijakazi*
Civil No. 22-1246-BAH
May 5, 2023
Page 7

Defendant responds that the ALJ need not have done so, because "the ability to work on a 'regular and continuing basis' is inherently part of the RFC finding." ECF 16-1, at 14 (citing 20 C.F.R. § 416.945; SSR 96-8p, 1996 WL 374184 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). Defendant is correct. This Court has recognized that because "an RFC determination implicitly contains a finding that [a] plaintiff is able to work an eight-hour work day, the ALJ's failure to explicitly state that as part of the RFC is immaterial." *Adrienne P. v. Kijakazi*, Civ. No. BPG-22-358, 2023 WL 2407394, at *3 (D. Md. Jan. 6, 2023) (finding that an ALJ's failure to address a plaintiff's "ability to perform work-related activities eight hours per day, five days per week" did not warrant remand). Because I find that the ALJ adequately evaluated Plaintiff's RFC for the reasons stated above, Plaintiff's final argument is also unavailing.

## V.     CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment, ECF 16, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge